UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD A. CLARK,<br><br>Plaintiff,<br><br>v.<br><br>RIVER METALS RECYCLING, LLC and<br>SIERRA INTERNATIONAL MACHINERY,<br>LLC,<br><br>Defendants. | Case No. 3:15-cv-00447-JPG-RJD |

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

Plaintiff Richard Clark has asked the Court to reconsider—pursuant to Federal Rule of Civil Procedure 59(e)—its decision to grant summary judgment to the defendants. (ECF No. 249.) The Court **DENIES** the motion.

## I. BACKGROUND

This is a products liability case about a man who was injured when he either fell or jumped from a mobile RB6000 Logger/Baler: a car crusher. (*See generally* ECF No. 245.) The Court granted summary judgment for the defendants when plaintiff Richard Clark failed to present reliable expert testimony on any alleged design defect, which is a requirement of the risk/utility test under Illinois law. *Henry v. Panasonic Factory Automation Co.*, 396 Ill. App. 3d 321, 327, 917 N.E.2d 1086, 1092 (2009); *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 834, 557 N.E.2d 580, 588 (1990); *Show v. Ford Motor Co.*, 659 F.3d 584, 588 (7th Cir. 2011). The Court also found that Clark's proposed expert—Dr. James Blundell—failed under the standards outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny. Clark had attempted to rely on the deposition testimony of some of defendant Sierra

1

International Machinery, LLC's employees in order to carry his burden, but that theory also failed. (*See* ECF No. 245, pp. 13, 14.)

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) allows the Court to amend a judgment if the movant "can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize **controlling precedent**." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations and citations omitted) (emphasis added). This form of relief is only available if the movant clearly establishes the manifest error. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001)).

## III.  ANALYSIS

### A.  Errors of Law

Controlling precedent in this Court consists of (1) Supreme Court of the United States decisions; (2) Seventh Circuit decisions; and (3) in diversity cases like this one, certain Illinois state decisions. Decisions from other federal circuit courts—and especially unpublished district court decisions—are not controlling precedent. So when Clark starts his brief by arguing that the Court committed a manifest error of law by adjudicating the *Daubert* issue at the summary judgment stage without holding oral arguments—because of cases like *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184 (1st Cir. 1997), *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999), and *Yow v. Cottrell, Inc.,* No. 3:04CV888 DRH, 2006 WL 2736122, at *10 (S.D. Ill. Sept. 25, 2006), *opinion vacated in part on reconsideration*, No. 3:04-CV-888-DRH, 2007 WL 2229003 (S.D. Ill. Aug. 2, 2007)—he has certainly failed to establish

that the Court failed to apply controlling precedent. And even if those cases applied here, none of them support the proposition that the Court is required to hold oral arguments in every *Daubert* dispute: (1) the First Circuit in *Cortes-Irizarry* did not mandate oral arguments, but instead said that courts should generally use "great care" when adjudicating *Daubert* issues at the summary judgment stage without the benefit of a hearing, 111 F.3d at 188; (2) the Third Circuit has since limited *Padillas* to not require a hearing when, just like in this case, the "district court already had before it the depositions and affidavits of plaintiff's experts[,]" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3rd Cir. 2000); and (3) *Yow* cited no case law in its one-paragraph consideration of the *Daubert* issue therein and is accordingly not persuasive in any sense.

Next, Clark argues that the Court failed to apply controlling precedent when deciding to exclude Dr. Blundell's expert testimony pursuant to *Daubert*. Basically, Clark argues that Dr. Blundell (1) is highly qualified; (2) cited to an industry standard; and (3) was not required to propose his own specifications for an alternative design. None of these arguments work. First, the Court struck Dr. Blundell's testimony because of his lack of methodology, not his qualifications. (*See* ECF No. 245, pp. 9–13.) Second, the Court already noted that the industry standard that Blundell cited did not require the alternative ladder design that Blundell proposed—and he admitted as much at his deposition, when he said "I believe to make this vehicle safe [a fixed ladder] has to be there but, I mean, there's nothing in this standard that says you have to have a fixed ladder." (*Id.* at 12 [citing Blundell Dep. at 102:16–19, ECF No. 145, Ex. H].) And contrary to Clark's unsupported assertion in his 59(e) motion, a jury is not entitled to hear Dr. Blundell's "interpretation of the standard and why he believes it is relevant to his opinions in this case" when Dr. Blundell already admitted that the standard does not apply. (Pl.'s Mot. for Reconsideration, ECF No. 249, p. 6.)

Third, Clark fails to adequately address the central reason for the Court's exclusion of Dr. Blundell's testimony:

> **The Court is puzzled why it should admit expert testimony regarding safety mechanisms that would allegedly help with routine maintenance when that expert does not even know where that maintenance is supposed to be performed. That alone disqualifies Dr. Blundell.** But there are more reasons as well. Notably, Dr. Blundell offered no calculations to support his theory, he does not provide even a rough sketch of an alternative design, and his opinion is nothing more than a "bare conclusion" that adds "nothing of value to the judicial process." *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) (quoting *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)).

(ECF No. 245, p. 12) (emphasis added). Clark instead argues that Dr. Blundell was not required to propose his own specifications at all, and may rather state generally that the side of the machine where the injury occurred should just mirror the other side of the machine. (Pl.'s Mot. for Reconsideration, ECF No. 249, p. 6.) Clark argues in the same paragraph that an "alternative feasible design already exists on the same piece of equipment and on other pieces of equipment built by Defendant Sierra," but he does not identify any portion of the record where Dr. Blundell discussed this—so it does not appear relevant to the *Daubert* exclusion question. (*Id.*)

Next, Clark claims that the safety features in this case—chiefly, a ladder—are simple enough for a layperson to understand, so expert testimony regarding the car crusher is not required under Illinois law. For the reasons already explained in the Court's prior decision, that argument is wrong: the product in this case—an RB6000 mobile baler—is a highly specialized piece of industrial machinery that no ordinary consumer will have purchased or even heard of. Accordingly, the risk-utility test applied to this case—not the consumer expectations test—and the risk-utility test requires the plaintiff to offer proof beyond the jury's own experiences: such as expert testimony on the feasibility of alternative designs, conformity with industry standards, guidelines by industry associations, legislative criteria, and more. *See, e.g., Henry v. Panasonic*

*Factory Automation Co.*, 396 Ill. App. 3d 321, 327, 917 N.E.2d 1086, 1092 (2009) (affirming summary judgment for the defendant when the plaintiff did not present expert testimony on the design and manufacture of a "specialized piece of equipment" that required "specialized knowledge"); *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 834, 557 N.E.2d 580, 588 (1990) (expert opinion is necessary when the product involves "specialized knowledge or expertise outside the layman's knowledge"); *Show v. Ford Motor Co.*, 659 F.3d 584, 588 (7th Cir. 2011) ("absence of expert evidence…is fatal to plaintiffs' suit.") There is no need to re-hash any of this.

Clark also points to a few cases where Illinois state courts did not require expert testimony, but none of them help his cause: (1) the Court already explained that *Hernandez v. Power Const. Co.*, 73 Ill.2d 90 (1978) deals with the absence of a ladder on some scaffolding in an Illinois Structural Work Act case, which is quite different from the instant case; (2) *Thacker v. UNR Indus., Inc.* 151 Ill.2d 343, 336 (1992) dealt with a scenario there "were numerous witnesses who were able to describe the mechanics of asbestos movement because they were able to see the 'haze' of asbestos which existed 'throughout' the plant," while there were no witnesses to Clark's accident in this case; and (3) *Ryan v. Blakey*, 71 Ill. App. 3d 339, 353 (1979) found that there was no need for an elaborate physical exhibit at trial to show how fluid flows from one place to another, which, again, does not have much bearing here.

Clark makes one final argument: that he should be able to present the deposition testimony of two of defendant Sierra's employees—as well as Sierra's expert witness—in order to carry his burden under the risk-utility test. But the two employees—Antonio Torres and Stephen Simmons—were never identified as expert witnesses by either party during this case, and the deposition testimony that Clark seeks to use mainly consists of a series of "yes" and "no"

5

questions and answers. That is not expert testimony sufficient to defeat a *Daubert* challenge in a complex products liability suit, as this Court already explained at length. (ECF No. 245, pp. 13, 14.)

The third individual is Sierra's expert: Michael Rogers. Clark believes that Rogers's deposition alone is enough to carry his burden under the risk-utility test regarding the absence of ladders, guardrails, and the like on the car crusher. But Clark has waived this argument: he did not make it in his response to the motions for summary judgment. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)). Instead, Clark argued at that time: "we intend to rely upon defendant's experts **(Mr. Torres, Mr. Simmons, Mr. Olds)** principally on alternative design; that is, with some safe way to mount and dismount from the machine which was Sierra's non-delegable duty." (Pl.'s Resp. to Mot. for SJ, ECF No. 239, p. 19) (emphasis added). Clark did later mention that "perhaps Mr. Rogers would be helpful on 'toe boards' (which we do not suggest are common knowledge)," but that is it. (*Id.*) Identifying a witness who might be "helpful on toe boards" in one sentence—in a case where the briefing rests almost entirely on *ladders* (and to a much lesser extent, guardrails)—does not come remotely close to meeting Clark's burden to present expert testimony in a complicated products-liability case at the summary judgment stage. *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("…perfunctory and undeveloped arguments…are waived.") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). In fact, Clark himself demonstrates in the instant briefing how perfunctory his prior argument about Mr. Rogers was: he did not mention Mr. Rogers in relation to ladders—his overarching theory in this case—until his Rule 59(e) motion, and then again develops that argument in more detail in his reply brief to the defendants' response to his 59(e) motion. These

freshly minted arguments include new citations to deposition testimony, cases that did not appear in Clark's response brief at the summary judgment stage, and more. That is a textbook example of waiver.

B. **Errors of Fact**

To finish, Clark argues that the Court made several manifest errors of fact in its decision. None of these arguments correctly represent the Court's order. First, Clark says that the Court incorrectly identified F.LLI Tabarelli S.p.A. as the assembler of the car crusher, when it was actually Sierra that imported the machine into the country and attached it to the mobile trailer. (Pl.'s Mot. for Reconsideration, ECF No. 249, p. 16.) That argument ignores the fact that the Court said in its decision—in the sentence directly after the one that Clark objects to—that "('Sierra') then imported the baler into the United States, reassembled it to some degree, mounted it on a trailer, and sold the entire machine…." (ECF No. 245, p. 1–2.)

Clark also says that the Court erred when it stated that "[o]nce Clark checked the tanks, he always used the same method to get down: he would face away from the trailer and jump—even though the Operator's Manual says 'Do NOT jump off the machine' . . . So one day, after re-filling the hydraulic fluid using his method, Clark fell." (Pl.'s Mot. for Reconsideration, ECF No. 249, p. 16–17.) Clark thinks that "the Court correctly states elsewhere in its [o]rder" that "Mr. Clark testified that he fell when stepping down from the machine, not when jumping off of it"—but that the Court failed to do the same in this one instance. The Court is constrained, once again, to address Clark's arguments. In its order, the Court specifically cited to Clark's deposition testimony, where he stated that he dismounted from the machine every time in the same manner: facing away from the trailer and jumping. (Richard Clark Dep. at 95:3–10, 116:18–117:4, ECF No. 145, Ex. G.) And then the Court identified the part of the deposition

where Clark contradicted himself: when he said that he did not know why he fell in this one instance. (*Id*. at 67:15–24.) Every factual discrepancy is there.

To conclude, Clark complains that the Court cited to the portion of the Operator's Manual that says "Do NOT jump off the machine"—even though the Operator's Manual, attached as an exhibit to Sierra's motion for summary judgment—says "Do NOT jump off the machine." (Sierra's Mot. Sum. J., ECF No. 145, Ex. F, p. 6.) And whether Clark received a copy of that manual is completely irrelevant: Clark did not plead a failure to warn theory in this case, as the Court already explained at length in its prior decision. There is nothing to reconsider here.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Clark's motion for reconsideration (ECF No. 249) and motion for a hearing on the same (ECF No. 250), as well as Sierra's motion to strike Clark's reply brief (ECF No. 254).

**IT IS SO ORDERED.**

**DATED: AUGUST 24, 2018**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**

8